**R O B E R T   M A R I N E L L I**
A T T O R N E Y   A T   L A W
3 0 5   B R O A D W A Y ,   1 4 ᵀᴴ   F L O O R
N E W   Y O R K ,   N E W   Y O R K   1 0 0 0 7
( 2 1 2 )   8 2 2 - 1 4 2 7
F a c s i m i l e   ( 2 1 2 )   2 0 2 - 9 6 4 6

February 22, 2016

**BY ECF**
The Honorable Roslynn R. Mauskopf
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>Underwood, et al. v. City of New York, et al.</u>, No. 14 Civ. 7531 (RRM) (MDG)

Dear Judge Mauskopf:

    I am plaintiffs' counsel in the above-referenced action.  I write to request a conference to discuss Plaintiffs' anticipated motion to disqualify the New York City Law Department ("the Law Department') due to the conflict between its clients the City of New York and Eduardo Cornejo, or, in the alternative, for a <u>Dunton</u> hearing to ensure that each of the individual defendants are accurately advised of the conflict posed by defense counsel's concomitant representation of all of the defendants.

    Plaintiff also requests that discovery, which is currently scheduled for completion by February 29, 2016, be stayed until this issue is resolved.

    **I.**    **Legal Standards And Brief Discussion**

    It is well settled that federal district courts have the authority "to disqualify attorneys in litigation pending before them" when it is "necessary to preserve the integrity of the adversary process."  <u>Bd. of Educ. v. Nyquist</u>, 590 F.2d 1241,1245-46 (2d Cir. 1979).  Although this authority is not to be exercised lightly, disqualification may be appropriate if there is an actual conflict between the attorney and the client that will work a prejudice to the client.  An "attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the] defendant's interests diverge with respect to a material factual or legal issue or to a course of action."  <u>U.S. v. Schwarz</u>, 283 F.3d 76, 91 (2d Cir. 2002) (citing <u>Winkler v. Keane</u>, 7 F.3d 304, 307 (2d Cir. 1993)).  The conflict must adversely affect the attorney's performance.  See <u>U.S. v. Williams</u>, 372 F.3d 96, 102 (2d Cir. 2004).

    As described below, an actual conflict exists between Cornejo's interests, and potentially those of the other individual defendants, and those of The City and its lawyers.

    **II.  Factual Underpinnings of The City's Conflict and The City's Failures of Disclosure**

    The Law Department first appeared as counsel for Cornejo on February 13, 2105, and has

represented him continuously to date.  In January 2016 Cornejo was terminated by the NYPD for, inter alia, (1) failing a random drug test, (2) running a prostitution ring which trafficked at least one minor victim, (3) tampering with evidence, (4) being convicted of criminal trespass, and further transgressions. Neither the underlying investigations nor his termination were disclosed to the undersigned by the defendants.

It was not until early February 2016 that plaintiffs learned from a spate of articles in national and local newspapers and magazines that Cornejo had been arrested and was being actively prosecuted in this Court under docket 16-MJ-0069 (MDG) for, in part, running a prostitution ring that victimized at least one minor child.  The arraignment minutes reveal that Cornejo attempted to tamper with evidence while in the presence of an FBI agent. Moreover, if not more importantly in the context of this motion, the NYPD's Internal Affairs Bureau had begun working with the FBI to investigate Cornejo in connection with the prostitution ring as far back as April 2015. Notably, plaintiff then learned from a prior article that Cornejo had been previously arrested and convicted for trespassing in 2012, and failed a random drug test in 2015, and been placed on modified duty by the NYPD in January 2015. (Copies of the minutes are annexed as Exhibit 1, pages 3 -7; articles published in the Daily News, New York Times, and Gawker Media are attached as Exhibit 2).

It bears repeating that plaintiffs, who have been litigating this matter for many months, learned of this information entirely from the February 2016 news stories, while the City and its counsel – who were surely aware of these events – said nothing. It was only through articles published just a few weeks ago concerning Cornejo's very recent arrest that plaintiffs learned about Cornejo's prior criminal conduct, ongoing federal prosecution, and failed drug test, which had engendered substantial conflict between Cornejo and his employer, the City of New York, both of whom are parties in this case and both of whom are represented by the City's house counsel.

### III. The City's Interests Conflict With Those of Cornejo

#### A. The City's Employment Action Against Cornejo Creates a Conflict

Cornejo's recent firing places him places in an adversarial relationship with The City, vis-à-vis not only his firing, but also any administrative or judicial challenge that Cornejo might raise relative to his termination. It is axiomatic that the City's will marshal as much evidence of "cause for termination" as possible.[1]  See, e.g., George v. City of Buffalo, 789 F. Supp.2d 417, 434 (W.D.N.Y. 2011) (noting that "several risks sought to be avoided by [New York Rules of Professional Responsibility] 1.7 arise where an attorney seeks to represent both a party and potential adverse witness including pitting the duty of loyalty to witness against the duty of loyalty to client, risk of breaching duty of confidentiality to witness"). Here, the same lawyers –

---

[1] In the event that The Law Department opposes this motion by stating that Cornejo's termination has been handled in such a way that no employment disputes are likely to arise due to a release Cornejo signed in exchange for severance or some other benefit, Plaintiffs respectfully request limited discovery to demonstrate that fact.  However, if that were true, as explained below, Plaintiffs believe that other conflicts remain.

2

i.e., house counsel for the City of New York – have been advocating a joint defense on behalf of Cornejo, his fellow individual defendants, and the municipal defendant, while concurrently fighting to terminate Cornejo.

That the municipal defendant's interest to assign any liability in this case to Cornejo, as opposed to any of the other defendants, alone requires disqualification.[2] It is equally evident that the remaining defendants have every incentive to distance themselves from Cornejo, creating a schism between two classes of individual defendants, both of which are represented by the same Law Department. That defense counsel is already acting in an adversarial capacity to Cornejo with respect to his employment makes clear where the Law Department's loyalties lie.

### B. The City Has Not Agreed to Indemnify Cornejo

As the civil litigation is still ongoing, the City cannot have made a formal decision as to whether or not it will indemnify Cornejo. While the decision whether to indemnify is not made until a judgment is entered against an employee. Banks, 214 F. Supp.2d at 408, it is fair to presume that the City will seek to avoid indemnifying an officer who has been publicly indicted, fired, and fully disgraced, in no small part because he is alleged to have sexually exploited at least one minor child. The City's incentive to place its own interests – whether they are grounded in legal maneuvering, public relations, or otherwise – is a direct and actual conflict.

It would be unfair to Cornejo to allow him to proceed as though he is sheltered by the City's umbrella when, in fact, the Law Department is the proverbial wolf in sheep's clothing. More importantly, the plaintiffs would be substantially prejudiced if they were forced to proceed against Cornejo through trial when the violation of Cornejo's right to unbiased representation would necessarily result in the vacatur of any subsequent verdict in plaintiffs' favor.

### IV. In the Alternative a Dunton Hearing Must Be Held

In the event that the Court believes that the conflict in this case has not yet ripened into actual prejudice, Plaintiffs respectfully request, in the alternative, a Dunton hearing to apprise the defendants of the potential conflict so that they can make a knowing waiver of that potential conflict on the record.

The Second Circuit has held that it is "prima facie improper" for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1387 (2d Cir. 1976). While the conflict may be waivable, a Dunton hearing permits the Court and the Parties to know that the client facing

---

[2] It should be noted that the City, along with the FBI, conducted a long-term investigation of Cornejo resulting in the February 2016 commencement of the aforementioned prostitution prosecution being litigated in this Court. The City's conscious or subconscious motive to dirty Cornejo's reputation by shifting any liability in this case upon him is thus made all the easier by the fact that the City has been methodically building a case against Cornejo for the past ten months for criminal prosecution.

the conflict waived it knowingly. The Second Circuit has ordered district courts considering whether The Law Department's joint representation of the City and its employees creates a conflict requiring such a hearing to review each litigation's distinct facts to make a "case-by-case determination." See Coggins v. Cty. of Nassau, 615 F. Supp.2d 11, 33 (E.D.N.Y. 2009) (citing Patterson v. Balsamico, 440 F.3d 104, 114 (2d Cir. 2006)).

Here, the potential for conflict confronted by the Defendants is not the workaday conflict that any police officers face when The Law Department represents both the municipal and individual defendants. The Law Department, insofar as it may be defined as "in house" counsel for the City, has strong motivation to disfavor Cornejo, and the other Individual Defendants may also suffer as a result.

## V. Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court grant them the opportunity to make and brief a disqualification motion or, in the alternative, a motion for a Dunton hearing.

    Thank you,

    /s/

    Robert Marinelli