

**ZACHARY W. CARTER**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Maria Fernanda DeCastro**
*Assistant Corporation Counsel*
mdecastr@law.nyc.gov
(212) 356-2658
Fax: (212) 356-3559

March 11, 2016

**BY ECF**
Honorable Marilyn D. Go
United States Magistrate Judge
Southern District of New York
225 Cadman Plaza East
Brooklyn, NY 11205

      Re: Darnell Underwood, et al. v. City of New York, et al.,
          14-CV-7531 (RRM) (MDG)

Your Honor:

      I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, representing defendants City of New York, former Officer Cornejo, Officer Delacruz, Officer Gonzalez, and Sergeant Leonardi, in the above-referenced matter. Defendants write respectfully in response to plaintiffs' motion to compel dated March 7, 2016.

      By way of background, plaintiffs allege, *inter alia*, that on August 5, 2014, they were falsely arrested. Discovery in this matter began on April 27, 2015. Defendant City's Responses and Objections to Plaintiffs' First Set of Interrogatories and Document Requests were served on plaintiffs on May 27, 2015. On February 4, 2016, more than 9 months after receiving defendant City's responses, plaintiffs served defendants with a deficiency letter. On February 9, 2016, defendants, in writing, responded to plaintiffs' deficiency letter. On March 7, 2016, plaintiffs filed a motion to compel.

**1. IDENTIFICATION OF OFFICERS**

      At the outset, defendants acknowledge that all officers who were present at the scene, and who were involved in plaintiff Darnell Underwood's arrest, have not been identified. However, defendants have agreed to produce this information as soon as it is available. For numerous reasons, identification of the officers who responded is difficult. During the incident, defendants Delacruz and Gonzalez put a call over the radio for backup. Several vehicles responded. There is no log of which officers responded, and there was no IAB investigation that

happened directly after this incident. Nor do the named officers involved recall which officers were present. The only way to identify which officers responded to the backup call is to speak with all the officers on patrol that day to see if anyone remembers responding. Additionally, this office is working with the New York City Police Department ("NYPD") to attempt to identify the officers involved in Darnell Underwood's arrest.

## 2. PHOTOGRAPHS OF DEFENDANTS

Plaintiffs seek photographs of each officer present at plaintiffs' arrest. For the reasons set forth below, the motion to compel photographs of officers on the scene should be denied.

### a. Photographs of the named defendants

Plaintiffs' request for photographs of the individually named defendant officers is, *inter alia*, not relevant because identification of the named defendants is not at issue. Where there is no question as to the identities of the individuals involved, a plaintiff is not entitled to photographs of law enforcement officers, which carry obvious safety concerns if disseminated. Tareem McDonald v. City of New York, No. 13-CV-4529 (ARR) (VVP), Dkt. No. 21 (E.D.N.Y. Mar. 24, 2014) (denying plaintiff's motion to compel photographs of police officers where there was no question as to their identities).

Further, disclosure of the individual defendant officers' photographs is protected by the official information and law enforcement privileges. The Second Circuit has held that in order to rebut the "strong presumption" against lifting the law enforcement privilege, a party seeking disclosure of privileged information must show, *inter alia*, that there is a "compelling need" for the information sought. Dinler v. City of New York (In re City of New York), 607 F.3d 923, 945 (2d Cir. 2010) (citation omitted).

Here, plaintiffs have failed to state any "compelling need" for the photographs. Further, these photographs may be disseminated to the public through the Internet or other means, thereby infringing the officers' privacy interests and endangering their physical safety. Accordingly, defendants contend that the requested photographs of the individually-named defendants are protected from disclosure.

The cases cited in plaintiffs' motion to compel are inapposite. In Castro v. City of New York, 94 Civ. 5114 (JFK), 94 Civ. 6767 (JFK), 1995 U.S. Dist. LEXIS 17631, at *1 (S.D.N.Y. November 28, 1995), a case in which the identity of various police officers was in issue, defendants did not dispute the relevance of the requested photographs but requested that they be permitted to include those photographs in a photo array in order to test plaintiff's ability to identify the officer who conducted an alleged strip search of her. In Lozano v. New York, 88 Civ. 0659 (SWK), 1992 U.S. Dist. LEXIS 5133, at *4 (S.D.N.Y. April 17, 1992), the Court held that the photographs were necessary in order to determine which individual police officers were subject to the claims raised. Lastly, in Snoussi v. Bivona, 05 CV 3133 (RJD) (LB), 2009 U.S. Dist. LEXIS 18155, at *4 (E.D.N.Y. March 10, 2009), photographs were necessary to narrow the scope of discovery to the defendants allegedly involved in plaintiff's excessive force claim.

In this case, plaintiffs are seeking photographs of the individually names defendants. However, identification of the individually named defendants is not at issue. Therefore, unlike the cases cited by plaintiffs, plaintiffs cannot use the photographs to identify specific individuals that are subject to their alleged claims.

Furthermore, plaintiffs will see what the officers look like when they attend their depositions. Accordingly, it would be an exercise in futility to produce the photographs of defendants where plaintiffs already have the names and are aware of the identities of each of the individual officers.

### b. Photographs of the "unnamed defendants"

Plaintiffs' contention that they need photographs of each officer present at plaintiffs' arrests in order to identify the officers who arrested plaintiff Darnell Underwood is without merit. Plaintiffs have a video that show the individuals who arrested plaintiff Darnell Underwood. If the video footage is not sufficient to identify the officers involved in plaintiff Darnell Underwood's arrest, it is unclear how a photograph would help identify these officers. Additionally, defendants have already agreed to identify the individuals seen on video arresting Darnell Underwood.

Moreover, defendants object to plaintiffs' request for the photographs of all the defendant officers on the grounds that it is vague, ambiguous, harassing and interferes with the privacy rights of the officers. Should the Court feel inclined to grant plaintiffs' request for photographs, defendants request that plaintiffs view the photographs in a photographic array and in the presence of counsel. See Davis v. City of Chicago, 219 F.R.D. 593 (N.D. Ill. 2004). While there are few cases that address the use of photographic arrays with fillers in the identification of defendants in the civil arena, Davis v. City of Chicago, 219 F.R.D. 593 (N.D. Ill. 2004) is instructive. The plaintiffs in Davis asserted constitutional rights violations based on allegedly unlawful stops and searches. Id. at 595. The plaintiffs moved to compel the City of Chicago to produce photographs of every officer who was on duty during the time and place of the complained stops and searches so that they could identify John Doe officers. Id. The City of Chicago did not object to the production of photographs, but, rather, contended that such production be pursuant to a reliable identification procedure. Id. In conducting its analysis, the Davis Court noted that it "found only two district court cases that address[ed] photograph identification of unnamed defendants. In both of those cases, the courts found that defendants were entitled to restrictions on viewing of the photographs." Id. at 596 n.2 (citing Matthews v. Charbonneau, No. 78-C1679, 1980 U.S. Dist. LEXIS 12609 (D. Mass. Jul. 30, 1980) (civil defendants were entitled to the same protection as criminal defendants against misidentification) and Santos v. Raymond, No. 84-C8230, 1984 U.S. Dist. LEXIS 21223 (S.D.N.Y. Dec. 14, 1984) (court allowed plaintiff access to requested photographs on condition that they would be viewed by witnesses only in the presence of defense counsel).

The Davis Court issued an order governing the identification of defendants by use of a photographic array in the presence of plaintiffs' and defendants' counsel. Id. at 600. Accordingly, defendants propose that this Court institute a reliable identification procedure consistent with the approach used by the Davis Court, constituting a photographic array with

fillers in the presence of counsel, as the more appropriate procedure for plaintiffs viewing of the photographs.

In the instant case, plaintiff Darnell Underwood gave testimony at his deposition providing a physical description of the officers who allegedly used excessive force against him. Therefore, production of the photographs of officers who responded without a photographic array would reveal the officers' ethnicities and physical characteristics, thus leading to an extremely unreliable and unduly suggestive identification procedure by plaintiff of the officers. Accordingly, defendants respectfully request that the Court order plaintiffs to view the photographs of the officers in a photographic array and in the presence of counsel in order to avoid an unreliable and unduly suggestive identification procedure.

### 3. REDACTION OF CCRB HISTORIES, IAB HISTORIES, AND CPIS.

Plaintiffs' motion to compel un-redacted versions of defendants' CCRB histories. IAB histories, and Central Personal Index's should be denied. Plaintiffs fail to cite any standard for disciplinary discovery and suggest that such discovery is automatic: it is not.

Discovery of 'other bad act' evidence should be tailored to the needs of the case. Thompson v. City of New York, 2006 U.S. Dist. LEXIS 4797, *5-6 (S.D.N.Y. Feb. 7, 2006). Here plaintiffs have failed to show that any of the issues to which the evidence sought could be relevant and are actually in dispute. See Berkovich v. Hicks, 922 F.2d 1018, 1022-1023 (2d Cir. N.Y. 1991) (To merit admission under this theory, the extrinsic acts must share "unusual characteristics" with the act charged or represent a "unique scheme."); United States v. Ivanova, 19 F. Supp. 3d 511, 516-517 (S.D.N.Y. 2014) ("prior act evidence of this kind must be relevant to an issue that is actually in dispute"); Djangmah v. Falcione, 2013 U.S. Dist. LEXIS 172324, *28-29 (S.D.N.Y. Dec. 5, 2013) ("the use of force alone cannot be enough to rise to the level of a modus operandi or regular pattern of behavior so as to justify permitting this line of cross-examination").

Unless plaintiffs can point to an issue in dispute *in this case* that falls under the exceptions in Rule 404(b) – *and they have not even attempted to do so* – the evidence of prior misconduct they seek has only one, improper, purpose, which is to prove propensity: "the very use of this evidence . . . . that Rule 404(b) is designed to prevent." *Id*. at *6 (quoting Shaw v. City of New York, 95 Civ. 9325 (AJP), 1997 U.S. Dist. LEXIS 4901, at **17-18 (S.D.N.Y. April 15, 1997)).

Plaintiffs seek discovery of all allegations, although the incident at issue here involves false arrest and excessive force. Defendants have already produced CCRB Histories, IAB Histories, and CPIs that contain un-redacted, substantiated and unsubstantiated, allegations of false arrest, excessive force, and false statements.[1] For the foregoing reasons, the motion to compel un-redacted versions of defendants' CCRB histories. IAB histories, and Central Personal Index's should be denied.

---

[1] Should the Court require more information about the material in dispute before ruling on the motion to compel, defendants respectfully request that such information be considered *in camera*.

**4. UNDERLYING CCRB FILES**

With respect to plaintiffs' request for underlying CCRB files, defendants would wholly object to production of the full disciplinary records as the documents sought are not proportional to the needs of the case considering the amount in controversy, the importance of the discovery in resolving the issues, and insofar as the burden and/or expense outweighs any likely benefit to plaintiffs. The prospect that plaintiffs might develop admissible evidence for mini-trials about unrelated allegations, which would be admissible to some issue in dispute, is remote. The discovery sought is simply not worth the burden to be imposed. Plaintiffs' delay until the very close of fact discovery to move to compel these records belies any assertion that they are important to the case.

In the alternative, should the Court require that any part of the discovery sought be had, defendants request that they only be ordered to produce closing reports of the requested CCRB files.

**5. MISSING DOCUMENTS**

**a. 79th precinct and PSA 3 Roll Call**

Defendants agree to produce the 79th Precinct and Police Service Area 3 Roll Calls for the Third Platoon on August 5, 2014, as soon as they are available. With regard to the Roll Calls for August 6, 2014, these documents are not relevant to this action and are beyond the scope of this litigation.

**b. Documents related to defendant Cornejo's May 16, 2012 arrest.**

With respect to plaintiffs' request for documents related to defendant Cornejo's May 16, 2012, arrest, defendants contend that plaintiffs failed to confer regarding this issue prior to filing a motion to compel. Additionally, plaintiffs did not request these documents during discovery.

Further, these documents are not relevant to this action and are beyond the scope of this litigation. Plaintiffs are not entitled to these documents simply because they believe that they may have something to do with the case at hand. Discovery about a collateral matter cannot be based on a mere hunch or speculation that it might lead to admissible evidence. See Surles v. Air France, 00 Civ. 5004 (FM), 2001 U.S. Dist. LEXIS 15315 at *5 (S.D.N.Y. Sep. 27, 2001) (discovery does not become relevant merely because a party speculates that it might reveal useful material). Based on the foregoing, defendants maintain that plaintiff is not entitled to documents related to defendant Cornejo's May 16, 2012 arrest, which is entirely unrelated to the present case.

**c. "Line of Duty" Documents**

- 6 -

First, it should be noted that plaintiffs did not ask any interrogatories or request documents related to whether the defendants in this action were injured during the incident. However, defendants agree to produce line of duty information, if any, as soon as it is available.

### d. Un-redacted Memobooks for Defendants

Plaintiffs have articulated no reason why these entries would be relevant or should be turned over. The entries that were redacted reflect incidents that are unrelated to the incident alleged in plaintiffs' complaint. These entries were redacted on grounds of relevance and that they may contain information sealed pursuant to New York Criminal Procedure Law §160.50. Thus, the court should deny plaintiffs' motion to compel defendants' un-redacted memobooks.

### e. The Personnel Order transferring Cornejo from the 67th precinct to the 79th

Defendants agree to produce this information as soon as it is available.

Thank you for your consideration herein.

Respectfully Submitted,

/s/
Maria Fernanda DeCastro
Assistant Corporation Counsel

cc:     BY ECF
        Robert Marinelli, Esq.
        *Attorney for Plaintiffs*
        305 Broadway, 9th Floor
        New York, NY  10007