UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

DARNELL AND RICHARD UNDERWOOD,

                              Plaintiffs,

               -against-

CITY OF NEW YORK, Police Officer EDUARDO
CORNEJO, Shield No. 13722, Police Officer MIGUEL
DELACRUZ, Shield No. 16184, Police Officer
WILLIAM GONZALEZ, Shield No. 14016, Sergeant
DAVID LEONARDI, Shield No. 13722, Lieutenant
MAREK NOWAK, Tax No. 932115, Police Officer
PETER SEGERDAHL, Tax No. 934719, and JOHN DOE
1 through 10 individually and in their official capacities
(the names JOHN DOE 1 through 10 being fictitious, as
the true name is presently unknown),

                            Defendants.

------------------------------------------------------------------ x

                     14-CV-7531 (RRM)(MDG)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

ROBERT MARINELLI, ESQ.
305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1427

*Attorney for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS.............................................................................. 1

ARGUMENT...................................................................................................... 2

I.  PLAINTIFFS' FALSE ARREST CLAIMS SHOULD NOT BE DISMISSED .... 2

A.      Defendants' Ignore Controlling Second Circuit Precedent Basing Probable Cause on Facts the Arresting Officer Knew at the Time of the Arrest.......................................... 2

II.  THE MUNICIPAL CLAIMS AGAINST THE CITY OF NEW YORK SHOULD NOT BE DISMISSED................................................................... 9

A.      The City is Liable for its Deliberate Indifference to the Pervasive History of Misconduct on the Part of Eduardo Cornejo, David Leonardi, and Wilson Gonzalez. ...... 9

CONCLUSION ............................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012), *as amended* (Dec. 4, 2012)

......................................................................................................................................... 2

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) .................................. 9

*Banks v. Fuentes*, 545 Fed. Appx. 518 (7th Cir. 2013)....................................................... 4

*Brown v. City of N.Y.*, 798 F.3d 94 (2d Cir. 2015) ............................................................. 6

*Bryant v. Serebrenik*, No. 15-CV-3762 (ARR)(CLP), 2016 U.S. Dist. LEXIS 149717

(E.D.N.Y. Oct. 28, 2016) ................................................................................................. 6

*Canton v. Harris*, 489 U.S. 378 (1989) ............................................................................. 9

*Colon v. City of New York*, No. 11-CV-0173 (MKB), 2014 U.S. Dist. LEXIS 46451

(E.D.N.Y. Apr. 2, 2014)................................................................................................... 6

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ........................................................................ 2

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ...................................................... 2

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) ............................................................. 2

*Gentile v. Cty. of Suffolk*, 926 F.2d 142 (2d Cir. 1991) .................................................... 11

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006)................................................................... 2

*Jeanty v. County of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005) ........................ 19, 20

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ................................................... 2

*Johnson v. City of N.Y.*, 11 Civ. 4435, 2014 U.S. Dist. LEXIS 98030 (S.D.N.Y July 18,

2014) ................................................................................................................................ 6

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996)............................................. 2

*Maryland v. Pringle*, 540 U.S. 366 (2003) ........................................................................ 2

*Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)............................ 9

*Morris v. Silvestre*, 604 Fed. App'x 22 (2d Cir. 2015)........................................................ 2

*Ricciuti v. N.Y. City Transit Auth.* (*Ricciuti II*), 941 F.2d 119 (2d Cir. 1991)............... 10

*Shamir v. City of N.Y.*, 804 F.3d 553 (2d Cir. 2015) ....................................................... 2, 3

*United States v. Ashley*, 569 F.2d 975 (5th Cir. 1978)......................................................... 6

*United States v. Chavez*, 534 F.3d 1338 (10th Cir. 2008) ................................................... 6

*United States v. Colon*, 250 F.3d 130 (2d Cir. 2001)................................................... 4, 6, 7

*United States v. Edwards*, 885 F.2d 377 (7th Cir. 1989) ..................................................... 5

*United States v. Nafzger*, 974 F.2d 906 (7th Cir. 1992)....................................................... 6

*United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996) ............................................... 4, 8

*United States v. Vasquez*, 534 F.2d 1142 (5th Cir. 1976) ................................................... 6

*United States v. Woods*, 544 F.2d 242 (6th Cir. 1976) ....................................................... 6

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995)....................................... 9, 10, 19

*Villante v. Dep't of Corrections*, 786 F.2d 516 (2d Cir. 1986)........................................... 9

*Warren v. Dwyer*, 906 F.2d 70 (2d Cir.), *cert. denied*, 498 U.S. 967 (1990) ..................... 3

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ............................................................. 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

DARNELL AND RICHARD UNDERWOOD,

Plaintiffs,

-against-

CITY OF NEW YORK, Police Officer EDUARDO
CORNEJO, Shield No. 13722, Police Officer MIGUEL
DELACRUZ, Shield No. 16184, Police Officer
WILLIAM GONZALEZ, Shield No. 14016, Sergeant
DAVID LEONARDI, Shield No. 13722, Lieutenant
MAREK NOWAK, Tax No. 932115, Police Officer
PETER SEGERDAHL, Tax No. 934719, and JOHN DOE
1 through 10 individually and in their official capacities
(the names JOHN DOE 1 through 10 being fictitious, as
the true name is presently unknown),

14-CV-7531 (RRM)(MDG)

Defendants.

------------------------------------------------------------------- x

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs Darnell Underwood ("Darnell") and Richard Underwood ("Richard")
submit this memorandum of law in opposition to Defendants' Motion for Partial Sum-
mary Judgment. Plaintiffs concede that damages for Darnell's false arrest claim will
cease when his bench warrant was discovered.

### STATEMENT OF FACTS

The facts of this case are set out and incorporated by reference herein in the ac-
companying Response to Defendants' Local Rule 56.1 Statement, the declaration of Rob-
ert Marinelli, and the documents annexed thereto, as well as the documents submitted by
defendants and the pleadings and record otherwise before the Court.

1

## ARGUMENT

## I.  PLAINTIFFS' FALSE ARREST CLAIMS SHOULD NOT BE DISMISSED

A claim for false arrest rests on the Fourth Amendment right of an individual to be free from unreasonable seizures, including an arrest without probable cause. *Morris v. Silvestre*, 604 Fed. App'x 22, 24 (2d Cir. 2015) (summary order) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause to arrest exists where the arresting officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins v. City of New York*, 478 F.3d 76, 84-85 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852); *see also Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (same).

### A.  Defendants' Ignore Controlling Second Circuit Precedent Basing Probable Cause on Facts the Arresting Officer Knew at the Time of the Arrest.

In determining whether probable cause exists, courts look to the facts known to the arresting officer at the time of the arrest.  *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.") (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)); *Shamir v. City of N.Y.*, 804 F.3d 553, 557 (2d Cir. 2015) (same); *Fabrikant v. French*, 691 F.3d 193, 217 (2d Cir. 2012) (same); *Ackerson v. City of White Plains*, 702 F.3d 15, 19-20 (2d Cir. 2012), *as amended* (Dec. 4, 2012) ("In deciding whether probable cause existed for an arrest, we assess 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996) (same) (citing

2

*Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir.), *cert. denied*, 498 U.S. 967 (1990)), and many others.

In *Shamir v. City of N.Y.*, the Second Circuit again affirmed the bedrock principle that the determination of probable cause is dependent on the facts ***known to the officers at the time of the arrest***. 804 F.3d 553, 556 (2d Cir. 2015). In *Shamir*, the district court had granted defendants' motion for summary judgment on plaintiff's false arrest claim, ruling that the police officers had probable cause to arrest Shamir for camping in the park based on plaintiff's later admission that he had indeed intended to sleep in the park. The Second Circuit held that "[w]hat Shamir admitted several months after his arrest cannot be used to show what the officers knew at the time of the arrest." *Id.* at 557. The court ultimately dismissed the false arrest claim for other reasons, but stressed that only facts to be considered in evaluating the existence of probable cause were those "relevant to what the officers knew at the time of the arrest." *Id.*; *see U.S. v. McDow*, 206 F.Supp.3d 829, 844 (S.D.N.Y. 2016) (stating that the government could not point to the content of text messages as supporting probable cause to arrest an individual "because the officers were not aware of the text messages when they arrested [the person]") (citing *Devenpeck*); *Williams v. City of Rome*, 2009 WL 2156914, at *3 (N.D.N.Y. July 15, 2009) (finding that what an officer learned after the plaintiff was placed in handcuffs was "irrelevant for purposes of determining whether there was probable cause to believe plaintiff was committing a crime because" the offer learned that fact after arrest).

The Second Circuit has further held that information scattered among various officers throughout a police department cannot substitute for the arresting officers' knowledge with respect to determining probable cause. *United States v. Colon*, 250 F.3d

3

130, 136 (2d Cir. 2001) (quoting *United States v. Shareef*, 100 F.3d 1491, 1504 & n.5

(10th Cir. 1996)). In other words, the fundamental cornerstone of the probable cause

analysis are the facts known to the arresting officers at the time of the arrest. Information

known to other members of the police department or contained in police databases is ir-

relevant to this inquiry until the arresting officers learn of its existence.

Notwithstanding this longstanding litany of Second Circuit decisional law, de-

fendants argue that although the arresting officers had no knowledge of any warrant for

Darnell at the time of the arrest,[1] the mere existence of an outstanding warrant is grounds

for judgment on his false arrest claim. Without even a passing tip of the hat to Second

Circuit case law, defendants cite to a Seventh Circuit case, *Banks v. Fuentes*, 545 Fed.

Appx. 518 (7th Cir. 2013), for the proposition that arresting officers can rely on an open

warrant they had no idea existed until well after an arrest made without probable cause to

provide retroactive probable cause for that otherwise unlawful arrest.[2] (Defs. Brief at 4).

---

[1]      It is undisputed that non-party officer Eric Thompson discovered the warrant ap-
proximately three hours after Darnell's arrest. Accordingly, Thompson did not and could
not have told defendants that there was an active arrest warrant for Darnell. Pl. 56.1 at ¶
25.

[2]      In *Banks*, the plaintiff was arrested for driving left of the center line. While Banks
was in his car, the officers learned of an investigative alert that had been issues several
days earlier when a shooting victim identified Banks as the assailant. Banks was ultimate-
ly convicted of aggravated battery and sentenced to eight years in prison. The court held
that the investigative alert provided retroactive probable cause to have stopped Banks.
*Banks v. Fuentes*, 545 F. App'x 518, 521 (7th Cir. 2013). It is likely that the severity of
the crime that Banks committed was a critical factor in dismissing his unlawful stop
claim against the officers, who otherwise had probable cause to arrest after discovering
the investigative alert. The instant case is completely different. Here, defendants are at-
tempting to rely on the late discovery of the warrant for alleged marijuana possession to
justify their false arrest and brutal assault of Darnell. This is untenable under established
Second Circuit precedent.

In short, the defendants are arguing that well settled Second Circuit case law should be cast aside on the strength of a Seventh Circuit summary order.[3] Defendants offer no cogent argument as to why this Circuit's longstanding requirement should be so casually set aside, suggesting that they are either unaware of this line of cases or were hoping it would go unnoticed. In any event, the *Banks* decision is of no moment.

According to defendants' interpretation of Seventh Circuit case law, any arrest can be justified after the fact, because a police department is a hive mind where information scattered among individual officers is automatically imputed to all other officers, as if by osmosis. Under defendants' construction of the doctrine, the knowledge of the officer at the time of the arrest is of absolutely no importance. Defendants are clearly incorrect.

To say in the abstract that probable cause is to be evaluated on the basis of the collective information of the entire police department ignores this Circuit's critical underlying assumption that there must be ***communication*** between those officers who do know facts amounting to probable cause and those who do not.[4] *See Brown v. City of N.Y.*, 798

---

[3]     The Seventh Circuit's Local Rule 32.1(b) expressly stated that such summary orders "are not treated as precedents," and it thus appears defendants are arguing that this Court ought to give *Banks* more weight and consideration than the Seventh Circuit expected from courts within its own districts.

[4]     Although we need only rely on Second Circuit case law, plaintiffs note that other circuits, including the Seventh Circuit—in opinions which its Local Rule 32.1(b) states "constitute the law of the circuit," also require that the officers with knowledge communicated with the arresting officers. *See United States v. Edwards*, 885 F.2d 377, 383 (7th Cir. 1989) ("A supervising officer's knowledge about a defendant cannot be relied upon to provide probable cause for his arrest where there is no evidence that such knowledge

F.3d 94, 99 (2d Cir. 2015) (officers with sufficient information for probable cause must have communicated the information they possess individually, in order rely on collective knowledge to meet the probable cause threshold) (citing *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)); *see also Bryant v. Serebrenik*, No. 15-CV-3762 (ARR)(CLP), 2016 U.S. Dist. LEXIS 149717, at *10 (E.D.N.Y. Oct. 28, 2016) ("Of course, '[i]n order for the collective knowledge doctrine to apply...there must have been some communication between the officers involved,'" citing *Colon v. City of New York*, 2014 U.S. Dist. LEXIS 46451, at *14 (E.D.N.Y. Apr. 2, 2014)); *Johnson v. City of N.Y.*, 2014 U.S. Dist. LEXIS 98030 (S.D.N.Y July 18, 2014) (fellow officer rule applies when arresting officer "acts upon the direction of or as a result of communication with a superior or [fellow] officer").

In *Colon*, a civilian 911 operator received an anonymous tip describing a Hispanic male, named "White Boy," wearing a red hat with a leather jacket. The dispatcher informed arresting officers, who arrived on the scene and observed that the defendant, William Colon, matched this description. Colon was stopped and frisked, and officers found a pistol in his waistband. Colon appealed a judgment convicting him of being a felon in possession of a firearm. 250 F.3d at 132-33.

At issue on appeal in *Colon* was whether the anonymous caller information given to the civilian 911 operator, but not conveyed directly to the arresting officers, could be

---

was communicated to the agents on the scene who actually made or ordered the defendant's arrest."); *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992) (knowledge may be mutually imputed when officers are in communication with each other while working together at a scene); *United States v. Ashley*, 569 F.2d 975, 983 (5th Cir. 1978); *United States v. Woods*, 544 F.2d 242, 259-60 (6th Cir. 1976); *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976).

imputed to the arresting officer under the collective knowledge doctrine. The Second Circuit vacated defendant's conviction and found that the *Terry* stop was not reasonable. The court explained that the anonymous caller had only spoken to the 911 operator, who did not have training in assessing probable cause or reasonable suspicion. It was not enough that the officers were given the same information as the 911 operator. An actual officer would need to have received the anonymous tip.

Though *Colon* does not explicitly rule on the issue of whether the discovery of a warrant after an arrest can provide an ex-post basis for probable cause, it provides an instructive analysis of the collective knowledge doctrine in the Second Circuit. The doctrine relies on a chain of knowledge leading from officers with peripheral involvement in a case to the actual dispatching or arresting officers on the case. If a peripheral officer has sufficient knowledge to arrest, that knowledge must be passed to the actual arresting officers. Any corruption – including the lack of sufficient training on one link of the chain – will break it. The *Colon* court explained:

> Imputing information ***known only to the civilian operator and not conveyed to the dispatching and then arresting officers*** would extend the doctrine beyond its current jurisprudential parameters and vitiate the privacy safeguards of the Fourth Amendment and their requirement that an officer may conduct a *Terry* stop only if the officer has a reasonable suspicion supported by articulable facts, ***by permitting a search where no law enforcement officials ever had sufficient information*** to provide a reasonable suspicion for the search.

250 F.3d at 137 (emphasis added, and internal quotations and citations omitted).

Under the *Colon* analysis, the fellow officer rule should not be extended to cases where, as here, there is no evidence that an officer has communicated his suspicions with the arresting officers. *Colon*, 250 F.3d at 136-37 & n.3 (2d Cir. 2001) (*citing Shareef*, 100

7

F.3d at 1504 & n.5) (declining to extend collective knowledge doctrine where evidence showed officers had not communicated with each other; "[i]nformation scattered among various officers in a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest." (quotation marks omitted)). In this case, the point of corruption is not a faulty link in the chain of knowledge (in *Colon*, insufficient training), but the complete absence of a link in the chain (here, arresting officers never obtained *any* information from Thompson).

Defendants would surely argue that it would be unfair and improper to hold that the knowledge of exculpatory evidence that is known to officers uninvolved or not present at an arrest can be imputed to arresting officers. Under defendants' logic in this case, however, every officer must be deemed to know those facts and information known throughout the department. Logically, such constructive knowledge is not conditional or qualitative, and thus individual defendants should not, under defendants' current theory, be permitted to argue that personal involvement or personal knowledge is a pre-requisite for liability. Rather, every officer tangentially involved can be deemed to know that an arrest is being made without probable cause, or that evidence is being fabricated or withheld, and every such officer is therefore liable for failing to intervene to protect the plaintiffs. The defendants would surely argue that such a rule would be fundamentally unfair and intellectually unsupportable, and plaintiffs suggest that it would equally inappropriate here.

In short, extending the fellow officer doctrine to impute knowledge to the arresting officers where there is no possible factual basis to do so would be in direct contraven-

8

tion to the Second Circuit's clear mandate that probable cause be based on what the officers knew at the time of the arrest.

## II.  THE MUNICIPAL CLAIMS AGAINST THE CITY OF NEW YORK SHOULD NOT BE DISMISSED

























## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment

should be denied in its entirety.

Dated:      May 12, 2017
            New York, New York


                                    /s
                                    ROBERT MARINELLI, ESQ.
                                    305 Broadway, Suite 1001
                                    New York, New York 10007
                                    (212) 822-1427