UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DARNELL UNDERWOOD; and
RICHARD UNDERWOOD,

                                    Plaintiffs,

-against-

CITY OF NEW YORK; POLICE OFFICER EDUARDO
CORNEJO, SHIELD NO. 13722; POLICE OFFICER
MIGUEL DELACRUZ, SHIELD NO. 16184;
POLICE OFFICER WILLIAM GONZALEZ,
SHIELD NO. 14016; SERGEANT DAVID LEONARDI,
SHIELD NO. 13722; LIEUTENANT MAREK NOWAK,
TAX NO. 932115; POLICE OFFICER PETER
SEGERDAHL, TAX NO. 934719; and JOHN DOE 1
THROUGH 10, individually and in their official
capacities,
                Defendants.
------------------------------------------------------------------X

**_AMENDED_**
**_MEMORANDUM AND ORDER_**

14-CV-7531 (RRM) (PK)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiffs Darnell Underwood and Richard Underwood (the "Underwoods") bring this action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, claims for false arrest, excessive force, and failure to intervene against the defendant individual officers in violation of their constitutional rights, and a claim for municipal liability against the City of New York (collectively, the "City defendants"). (*See generally* Third Am. Compl. (Doc. No. 59).) On June 23, 2017, the defendants filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 as to Darnell Underwood's false arrest claim, and municipal liability. (*See* Mot. Summ. J. (Doc. No. 75-9).) The Underwoods opposed the motion. (*See* Opp'n (Doc. No. 75-40).) For the reasons stated below, the defendants' motion for partial

summary judgment is granted as to municipal liability, and denied as to Darnell Underwood's false arrest claim.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed and taken from the parties' Local Rule 56.1 Statements. On August 5, 2014, at approximately 10:45 p.m., plaintiff Darnell Underwood was arrested near 411 Lafayette Avenue in Brooklyn, New York, for disorderly conduct. (Defs.' 56.1 (Doc. No. 75-8) at ¶¶ 1, 4.) Defendants Police Officer William Gonzalez, Police Officer Miguel Delacruz, Police Officer Peter Segerdahl, and Lieutenant Marek Nowak assisted in restraining and arresting Darnell Underwood. (Pls.' 56.1 (Doc. No. 75-39) at ¶ 11.) Richard Underwood observed Darnell's arrest and began recording it on his phone. (*Id.* at ¶¶ 12–13.) Police Officer Eduardo Cornejo and Sergeant David Leonardi arrested Richard Underwood for disorderly conduct. (*Id.* at ¶ 15–18.)

Darnell Underwood testified at his deposition – and the City defendants deny – that after he was brought back to the precinct, three unknown officers entered his cell and slammed him into the floor. (*Id.* at ¶ 21.) Darnell testified that he was taken to Woodhull Hospital and treated for two black eyes, a fractured knee, and a swollen rib. (*Id.* at ¶ 23.) Upon Darnell Underwood's return from the hospital – approximately 2:00 a.m. the day following his arrest – non-party Police Officer Eric Thompson discovered a valid warrant for his arrest that had been issued on June 16, 2014. (Defs.' 56.1 at ¶¶ 6–8.) The arresting officers were not aware of Darnell Underwood's outstanding warrant at the time of his arrest. (Pls.' 56.1 at ¶ 26.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

# DISCUSSION

I. **Active Arrest Warrant**

The existence of probable cause to arrest "is a complete defense to an action for false arrest, whether that action is brought under state law or under Section 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted). Probable cause exists, "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

Here, the City defendants do not argue that the officers who arrested Darnell Underwood had probable cause. In fact, they do not provide any facts regarding the information or observations that led to Darnell Underwood's arrest for disorderly conduct. Rather, the City defendants argue that because there was an active warrant for his arrest on other charges, Darnell Underwood "suffered no infringement of his Fourth Amendment rights as a matter of law, as he did not possess a right to be at large." (Mot. Summ. J. at 11.)[1] Specifically, the City urges the Court to adopt the Seventh Circuit's reasoning in *Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) and *Banks v. Fuentes*, 545 F. App'x 518 (7th Cir. 2013). The City asserts that these cases hold that the existence of an active arrest warrant defeats a claim for false arrest even if the arresting officer had no knowledge of the warrant at the time of arrest. As discussed more fully below, neither *Atkins* nor *Banks* stand for this broad proposition, and neither case applies to the facts and circumstances surrounding the arrest of Darnell Underwood.

---

[1] For ease of reference, citations to Court documents utilize the Electronic Case Filing System ("ECF") pagination.

4

The facts in *Atkins* and *Banks* are straightforward and, for purposes of this discussion, the same in all material respects. On the day each was arrested, Atkins and Banks were passengers in cars that were stopped by police officers. There was no dispute that the police officers did not have a basis to stop the vehicles in which each man was riding, and thus, the officers' conduct in so doing was unlawful. However, subsequent to the stop – but before any arrest – the officers discovered an active arrest warrant for Atkins, and an active investigative alert for Banks. Both the warrant and the alert gave the officers probable cause to support the arrest of each man.[2]

Both Atkins and Banks sued their arresting officers under 42 U.S.C. § 1983, claiming that their constitutional rights were violated when the officers unlawfully detained and arrested each man. The Seventh Circuit found otherwise in both cases.

The Circuit's holding is best articulated in *Atkins*, the earlier of the two cases and on which *Banks* wholly relies:

> [A] lawful arrest based on any outstanding warrant for a passenger in the vehicle constituted an intervening circumstance that dissipated any taint that had lacked reasonable suspicion. . . . But a simpler way to justify the result . . . without talking about "taints" and "dissipation" and "intervening circumstances" (and what do those terms mean, really?), is to note simply that the arrest was based on a valid warrant rather than on anything turned up in the illegal search.

*Atkins*, 631 F.3d at 826-827 (internal citation omitted). Thus, the Seventh Circuit found that there was no connection between the unconstitutional police *stop*, and the valid *arrest* of each man, as the arrests themselves were predicated *solely* on probable cause flowing independently from the warrant for Atkins and the investigative alert for Banks. *See also*, Utah v. Streiff, ___U.S. ___, 136 S. Ct. 2056 (2016) (discovery of a valid arrest warrant was a sufficient

---

[2] The investigative alert in *Banks* authorized Banks's arrest because other officers already had made a determination of probable cause, and the arresting officers who discovered the warrant were entitled to rely on the doctrine of collective knowledge. *Banks*, 545 Fed. Appx.at 520-521.

5

intervening event to break the causal chain between an unlawful stop and the discovery of drug-related evidence post-arrest).

That is not the case here. Darnell Underwood's arrest *preceded* the discovery of his outstanding warrant. He was under arrest for hours before the warrant was discovered and the warrant played no part at all in his arrest. The attenuation doctrine finds its roots in the tort law doctrine of proximate causation. *See Streiff*, 136 S. Ct. at 2072 (Kagan, J., dissenting). It defies logic to suggest that the discovery of an arrest warrant can break the causal chain for an arrest that has occurred *ex ante*. Thus, both the facts and the holdings in *Atkins* and *Banks* are inapposite to the case at bar.

The City seizes on some additional language from *Atkins*, also cited in *Banks*, to suggest that an active arrest warrant discovered post-arrest defeats a false arrest claim because the arrestee "did not possess a right to be at large." (Mot. Summ. J. at 11.) It reads:

> If police stopped cars randomly, looking for persons against whom there were outstanding warrants, the drivers and passengers not named in warrants would have good Fourth Amendment claims. But a person named in a valid warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended unless some other right of his is infringed, as would be the case had the police roughed up Atkins gratuitously in the course of trying to determine whether he was the person named in the warrant.

*Atkins*, 631 F.3d at 827. The City reads this passage too broadly. Its hypothetical simply illustrates that discovery a valid warrant can dissipate the taint of an unlawful stop, but says nothing about the lawfulness of effecting an arrest *prior to* the discovery of an active arrest warrant.

In light of this discussion, Darnell Underwood's claim for false arrest must, instead, be measured by traditional principles of probable cause, based on an objective assessment of the information known to the officers at the time of arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 152 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from

6

the facts known to the arresting officer at the time of the arrest."); *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.") (internal quotation marks omitted). The City has chosen not to rely on this probable cause determination in framing its arguments on this motion, and thus has not set forth the information giving rise to the officers' decision to arrest Darnell Underwood for the crime of disorderly conduct. Without it, the Court cannot determine whether Underwood's arrest was supported by probable cause, and thus, Darnell Underwood's false arrest claim remains viable.[3]

## II. Municipal Liability

The City defendants move for summary judgment on the Underwoods' municipal liability claim. In order to prove municipal liability, a plaintiff must establish the existence of a municipal policy or custom with a causal link to the deprivation of their constitutional rights. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978); *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." (citation and internal quotation marks omitted)), *cert. denied*, 565 U.S. 1259 (2012). Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Rather, a

---

[3] Darnell Underwood concedes that his claim for false arrest ends once the warrant was discovered, and his damages will be limited to the period between the time he was taken into custody at approximately 10:45 p.m. near 411 Lafayette Avenue, until the discovery of the warrant at the precinct several hours later. (Pl. Opp'n at 1, 5.) *See Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999) (limiting plaintiff's damages for false arrest to the time between an unlawful arrest and the discovery of evidence sufficient to support probable cause).

7

plaintiff must "demonstrate that, through its deliberate conduct, the municipality [itself] was the moving force behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted). "[M]ere assertions," are insufficient to sustain a *Monell* claim. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Here, the Underwoods assert that Officer Cornejo, Officer Gonzalez, and Sergeant Leonardi have extensive disciplinary histories, and that the City failed to adequately discipline and supervise them. On that basis, the Underwoods argue, a jury could infer that City officials at the policymaking level were deliberately indifferent to the officers' misconduct. (*See* Opp'n at 13.) However, the officers' history of disciplinary infractions, without more, is insufficient to withstand summary judgment.

To hold a municipality liable for failure to supervise, a plaintiff must first show that "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995). An obvious need may be demonstrated, for example, "through proof of repeated complaints of civil rights violations." *Id.*; *see, e.g.*, *Fiacco v. City of Rensselaer*, 783 F.2d at 328 ("whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force"). Second, the plaintiff must show that the city was deliberately indifferent to these obvious constitutional violations. *Simms v. City of N.Y.*, 480 F. App'x 627, 629 (2d Cir. 2012). A plaintiff may show deliberate indifference by demonstrating, for example, that (1) repeated complaints of constitutional violations are "followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents," or (2) by "expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an

unusually high risk that constitutional rights would be violated." *Vann*, 72 F.3d at 1049 (internal quotation marks omitted). *Accord Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (internal citations and quotation marks omitted).

Here, though the Underwoods have introduced evidence of numerous complaints against the defendant officers, the Underwoods have failed to introduce evidence that the municipality's response was contrary to the practice of most police departments, or that the City was deliberately indifferent in its response to these alleged violations. The Underwoods focus their opposition on the officers' disciplinary histories and suggest that "the City's negligence encouraged, or at least failed to deter, the ongoing and repeated episodes of illegal misconduct and falsehood by police officers like defendants, who believed themselves to be above the law." (*See* Opp'n at 15.) However, mere negligence is insufficient. *See Cash v. Cty. of Erie*, 654 F.3d 324, 331 (2d Cir. 2011) ("The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of conscious choice and not mere negligence.") (internal quotation marks omitted). The Underwoods have not introduced any evidence, such as expert testimony, that the City's response to complaints against the officers were in any way contrary to the practice of most police departments. *See, e.g.*, *Vann*, 72 F.3d at 1045 (reversing the district court's summary judgment dismissal of a *Monell* claim where the plaintiff cited to depositions of the members of the Early Intervention Unit, Central Personnel Index, Department Advocate's Office, or Psychological Services Unit to the effect that the New York City Police Department routinely failed to inform its supervisory units of the filing of civilian complaints against officers who had a history of abusive conduct).

The Underwoods have also failed to introduce evidence from which a jury could infer that the complaints against the officers were met with deliberate indifference by the City. Indeed, in response to the various complaints marshalled by the Underwoods, the City, *inter alia*, denied Sergeant Leonardi a favorable transfer, extended Officer Gonzalez's probationary period, transferred him, placed him on modified assignment, and forfeited his vacation days, and directed Officer Cornejo to enroll in substance abuse programs, temporarily reassigned him, and initiated disciplinary proceedings. (*See* Opp'n at 15–16, 19, 21; Gonzalez NYPD Record (Doc. No. 75-31) at 1404–1405.) On this record, no jury could infer that the City made "no meaningful attempt . . . to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049. *See, e.g., Stern v. City of N.Y.*, No. 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 80149, at *22 (E.D.N.Y. June 19, 2015) ("[I]t is undisputed that the City did, in fact, respond to the two most significant incidents . . . and disciplined him accordingly . . . This was not a situation where the City either failed to investigate prior incidents involving [defendant], or recklessly ignored citizen complaints.").

To the extent that the Underwoods attempt to bring a *Monell* claim based on failure to train, there is no evidence in the record to support such a contention. *See, e.g., Connick*, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.") The Underwoods seem to suggest that a jury could infer from the officers' disciplinary histories that the City has failed to train officers not to commit constitutional violations in general, and that failure to train caused the instant alleged violations of their constitutional rights. However, the Underwoods have failed to introduce evidence of any deficient or absent training program related to false arrest or excessive force that could have caused the instant alleged violations. *See, e.g., Connick*, 131 S. Ct. at 1360 ("A pattern of similar

constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (internal quotation marks omitted).

The Underwoods have failed to meet the stringent deliberate indifference standard. The Underwoods did not identify any deficient training program, failed to introduce expert testimony or evidence of police practices suggestive of the City's deficient supervisory or disciplinary customs or policies, and, in turn, failed to demonstrate that any City program "actually caused or was the moving force behind the alleged violations." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *see also City of Canton*, 489 U.S. at 391 ("[T]he identified deficiency . . . must be closely related to the ultimate injury."). Thus, the Underwoods have failed to introduce evidence from which a jury could infer that any City policymaker "disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360.

Accordingly, the defendants' motion for summary judgment as to the Underwoods' *Monell* claim is granted.

## CONCLUSION

For the reasons stated above, the City defendants' motion for summary judgment (Doc. No. 74) is granted as to municipal liability and denied as to Darnell Underwood's false arrest claim. This case is recommitted to the assigned Magistrate Judge for all remaining pre-trial proceedings, including additional discovery, the preparation of a Joint Pre-Trial Order, and settlement discussions if appropriate.

SO ORDERED.

Dated: Brooklyn, New York
        March 28, 2017

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge